**FOR PUBLICATION**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------X

|  |  |  |
|---|---|---|
|  | : | Chapter 7 |
| In re: | : |  |
|  | : | Case No. 10-11319 |
| Anthracite Capital, Inc., | : |  |
|  | : |  |
| Debtor. | : |  |
|  | : |  |

------------------------------------------------------------X

|  |  |  |
|---|---|---|
|  | : |  |
| Albert Togut, as chapter 7 Trustee of Anthracite Capital, Inc., | : | Adv No.  12-01191 |
|  | : |  |
|  | : |  |
| Plaintiff, | : |  |
|  | : |  |
| v. | : |  |
|  | : |  |
| Deutsche Bank AG, Cayman Islands Branch et al., | : |  |
|  | : |  |
| Defendants. | : |  |
|  | : |  |

------------------------------------------------------------X

|  |  |  |
|---|---|---|
|  | : |  |
| Albert Togut, as chapter 7 Trustee of Anthracite Capital, Inc., | : | Adv No.  12-01192 |
|  | : |  |
|  | : |  |
| Plaintiff, | : |  |
|  | : |  |
| v. | : |  |
|  | : |  |
| Bank of America, N.A. et al., | : |  |
|  | : |  |
| Defendants, | : |  |
|  | : |  |

------------------------------------------------------------X

```
-------------------------------------------------------X
                                               :
Albert Togut, as chapter 7 Trustee             :        Adv No.  12-01193
of Anthracite Capital, Inc.,                   :
                            Plaintiff,         :
                                               :
v.                                             :
                                               :
Morgan Stanley Mortgage Servicing Limited et al., :
                            Defendants,         :
                                               :
-------------------------------------------------------X
                                               :
Albert Togut, as chapter 7 Trustee             :        Adv No.  12-01204
of Anthracite Capital, Inc.,                   :
                            Plaintiff,         :
                                               :
v.                                             :
                                               :
BlackRock, Inc., et al.,                            :
                            Defendants          :
                                               :
-------------------------------------------------------X
```

## MEMORANDUM DECISION DENYING JOINT MOTION TO SEAL

### A P P E A R A N C E S :

Togut, Segal & Segal LLP
Attorneys for the Chapter 7 Trustee, Albert Togut
One Penn Plaza
New York, NY 1011
By:    Albert Togut, Esq.
       Scott Eric Ratner, Esq.

Jones Day
Special Litigation Counsel for the chapter 7 Trustee, Albert Togut
222 East 41st Street
New York, New York 10017-6702
By:    Corinne Ball, Esq.
       William J. Hine, Esq.
       Dan Moss, Esq.

Kramer Levin Naftalis & Frankel, LLP
Attorneys for the BlackRock Defendants
1177 Avenue of the Americas
New York, NY 10036
By:    Arthur H. Aufses III, Esq.
        Robert T. Schmidt, Esq.
        Jeffrey W. Davis, Esq.

U.S. Department of Justice
Off ice of the United States Trustee
33 Whitehall Street
21st. Floor
New York, NY 10004
By:    Andrew D. Velez-Rivera, Esq.


**CECELIA G. MORRIS**
**CHIEF UNITED STATES BANKRUPTCY JUDGE**

Before the Court is the Joint Motion of the chapter 7 trustee and the BlackRock

Defendants seeking an order sealing several documents filed in the Adversary Proceedings.  The

motion is denied for failure to meet the standard set forth in § 107(b) of the Bankruptcy Code.

The parties will be given an opportunity to request, rather than wholesale sealing, redaction of

confidential commercial information at a later hearing.

### Jurisdiction

This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1334(a), 28 U.S.C. §

157(a) and the Amended Standing Order of Reference signed by Chief Judge Loretta A. Preska

dated January 31, 2012.  This is a "core proceeding" under 28 U.S.C. § 157(b)(2)(A) (matters

concerning the administration of the estate).

### Background

Debtor filed this chapter 7 petition on March 15, 2010.  According to the petition, this is

one of the largest chapter 7 cases ever filed.  The Debtor and its subsidiaries began operating in

March of 1998 and were specialty finance companies that invested in commercial real estate assets on a global scale.

On January 13, 2012, an order was entered under Federal Rule of Bankruptcy Procedure 2004 permitting the Trustee to issue subpoenas for the production of documents and information and authorizing the examination of persons and entities.

On February 10, 2012 and February 15, 2012, four stipulations were so ordered by the Court.  The stipulations govern the production of confidential materials between the Trustee and several of the Defendants in these adversary proceedings, including BlackRock, Inc.; Bank of America, N.A.; Morgan Stanley Bank, N.A.; and Deutsche Bank, N.A. Cayman Islands Branch.

On March 15, 2012, the Trustee filed a motion under seal, which sought permission to file four adversary proceedings under seal.  On March 15, 2012, the Court entered an order authorizing the filing of those proceedings under seal for 45 days.  The adversary complaints were filed the same day.

**Adversary Proceedings and Motions to File Under Seal**

On March 15, 2012, the Trustee filed four adversary proceedings under seal, 12-01191 (the "Deutsche Bank preceding"); 12-01192 (the "Bank of America proceeding"); 12-01193 (the "Morgan Stanley proceeding"; and 12-01204 (the "BlackRock proceeding") (collectively the "Adversary Proceedings").   On April 27, 2012, an order was signed authorizing the documents in all four Adversary Proceedings to remain under seal until a date certain. Subsequent orders continued the seal; each order extended the seal to a date certain.   The most recent order extending the seal in these cases was entered on March 25, 2013.  That order extended the seal until April 26, 2013 and directed parties to file a motion to permanently extend the seal agreements.

On July 13, 2012, the Plaintiffs served the Defendants in the Adversary Proceedings (the "Deutsche Bank Defendants;" the "Bank of America Defendants;" the "Morgan Stanley Defendants;" the "BlackRock Defendants;" and, collectively, the "Defendants"), with the complaints. No answers have been filed before or after the August 7, 2012 deadline to respond to the complaints, perhaps due to an informal agreement between the parties.

On November 27, 2012, the Trustee filed a motion under seal to authorize the filing of an amended complaint in the BlackRock proceeding.  An order allowing the Trustee to file his motion to amend the complaint under seal was entered by the Court on November 29, 2012. Despite this order, no motion to amend the complaint has been filed by the Trustee.

In his original motion to file the Adversary Proceedings under seal, the Trustee argued that sealing these documents was necessary because the complaints contained confidential commercial information.  Joint Mot. ¶ 21, (No. 10-11319), ECF No. 74 (filed under seal).  He argued that the complaints should be sealed for 45 days "until" confidentiality issues could be worked out and that the parties were negotiating a settlement.  *Id.*  ¶¶ 22; 23-24.

On the parties' word that they were negotiating the terms of a settlement, including whether the documents would be unsealed, the Court extended the seal for weeks at a time at several points throughout the past year.  Once it became apparent to the Court that the parties did not intend to lift the seal on their own initiative, the Court directed briefing on the issue.

On March 11, 2013, the Trustee and the BlackRock Defendants (the "Movants") filed a joint motion to: 1) authorize the Trustee to file redacted versions of this motion and the Bankruptcy Rule 9019 motion; 2) seal certain documents, including the Adversary Proceeding Complaints and the Settlement Agreement, for a period of 30 years; and 3) shorten applicable

notice periods (the "Joint Motion"). Mot. Seal (No. 10-11319), ECF No. 124.[1]  No opposition

was filed to the Joint Motion.

The Movants argue in their brief that the Court should grant the request to seal the

requested documents for the following reasons:

1.  sealing is in the best interests of the Debtor's Estate and absent such relief, there

     will be no settlement;

2.  § 107(b)(1) requires the Court to protect confidential commercial information;

3.  § 107(b)(2) requires the Court to protect the Defendants from "scandalous"

     allegations;

4.  equitable concerns weigh in favor of granting the relief requested; and

5.  Public policy concerns do not outweigh the statutory mandate that the documents

     be sealed.

At a hearing held on April 25, 2013, the Court heard argument and took evidence in

support of the Joint Motion.  Counsel for the United States Trustee stated on the record that he

had reviewed the standard for sealing documents pursuant to § 107 of the Bankruptcy Code,  that

he believed that the standard had been satisfied, and that the United States Trustee did not

oppose the motion.   *See* Apr. 25, 2013 Trans., (No. 12-0124), ECF No. 63 at 58, ¶ 2-16.

### Discussion of the Law

"There is a strong presumption and public policy in favor of public access to court

records."  *In re Borders Grp., Inc.*, 462 B.R. 42, 46 (Bankr. S.D.N.Y. 2011).  Section 107(a) of

the United States Bankruptcy Code codifies the public's common law right to inspect and copy

judicial records and creates a presumption that all documents filed in a bankruptcy case are

---

[1] The Joint Motion was filed in the main case (No. 10-11319), ECF No. 124, as well as in each of the Adversary
Proceedings, (No. 12-01191), ECF No. 57; (No. 12-01192), ECF No. 57; (No. 12-01193), ECF No. 60; (No. 12-01204), ECF No. 57.

accessible to the public and subject to examination by the public at reasonable times without charge. 11 U.S.C. § 107(a); *Video Software Dealers Assoc. v. Orion Pictures Corp. (In re Orion Pictures Corp.)*, 21 F.3d 24, 26 (2d Cir. 1994); *see also Nixon v. Warner Commc'ns*, 435 U.S. 589, 597 (1978) ("It is clear that the courts of this country recognize a general right to inspect and copy public records and documents, including judicial records and documents.") (citations omitted).  This common law right is not absolute, however, and concealment may be necessary if access is sought for an improper purpose.  *See Nixon*, 435 U.S. at 597-98.

As such, § 107(b) creates narrow statutory exceptions to the public access presumption, mandating that the Court protect confidential information and defamatory or scandalous material upon request of a party in interest.  11 U.S.C. § 107(b) ("On the request of a party in interest the bankruptcy court *shall* . . . protect an entity with respect to . . . confidential . . . commercial information[] or  . . . protect a person with respect to scandalous or defamatory matter contained in a paper . . . .") (emphasis added);  *see also Video Software Dealers Assoc. v. Orion Pictures Corp. (In re Orion Pictures Corp.)*, 21 F.3d 24, 27 (2d Cir. 1994) ("[I]f the information fits any of the specified categories, the court is *required* to protect a requesting interested party and has no discretion to deny the application.") (emphasis in original).  In order to ensure that confidential information is protected as required under § 107(b), Bankruptcy Rule 9018 establishes the procedures to invoke § 107 and allows the Court to "make any order which justice requires." Fed. R. Bankr. P. 9018; *In re Borders Grp., Inc.*, 462 B.R. 42, 46 (Bankr. S.D.N.Y. 2011).  Bankruptcy Rule 9018 does not expand a bankruptcy court's ability to limit access to papers filed beyond the powers conferred in § 107, nor does it provide a separate basis for relief. *In re Gitto/Global Corp.*, 321 B.R. 367, 373 (Bankr. D. Mass. 2005); *see also* Fed. R. Bank. P.

9018 advisory committee's note ("This rule provides the procedure for invoking the court's power under §107 of the Code.").

A court's ability to limit the public's right to access remains an extraordinary measure that is warranted only under rare circumstances as "public monitoring is an essential feature of democratic control." *Geltzer v. Anderson Worldwide, S.C.*, 2007 U.S. Dist. LEXIS 6794, at *7 (S.D.N.Y. Jan. 30, 2007) (citing *United States v. Amodeo*, 71 F.3d 1044, 1048 (2d Cir. 1995)). Inherent in the language of § 107(b) is the requirement that the party requesting the extraordinary relief provide the court with specific factual and legal authority demonstrating that a particular document at issue is properly classified as "confidential" or "scandalous." *See United States v. Continental Airlines, Inc. (In re Continental Airlines, Inc.)*, 150 B.R. 334, 340-41 (D. Del. 1993) (refusing to seal documents based on "nothing more than the mere possibility" that they contained defamatory information). Despite the mandates of § 107(b), the Court has no authority to seal public documents or information derived from public documents. *Chase v. Chase (In re Chase)*, 2008 WL 2945997, at *7 (Bankr. S.D.N.Y. July 25, 2008).

**Preserving a Settlement Agreement is not a Reason to Restrict from Public Viewing**

The Movants argue that the Court has discretion to examine the relevant facts and circumstances of the case and then balance the interests of the party opposing disclosure with those of the public. In support of this argument, the Movants ask the Court to evaluate their motion under the *Hemple* factors.

In *In re Hemple*, 295 B.R. 200, 202 (Bankr. D. Vt. 2003), the court laid out a ten factor test to evaluate whether confidential provisions in settlements justify sealing the substance of the settlements. The *Hemple* factors include:

1. the necessity of the settlement to the viability of the bankruptcy case;

2.   whether the confidentiality provision is truly essential to the settlement, i.e., whether the settlement would be withdrawn if the confidential provision were not honored;

3.   whether the creditors have been notified of the request for approval of the settlement without disclosure of the amount or terms of settlement, and, if so, whether any objection was interposed;

4.   if there has been an objection to the request to file the agreement under seal, whether the objection demonstrates harm to the public's need to know;

5.   whether the creditors will clearly benefit from the settlement notwithstanding a lack of access to the specific terms of that settlement;

6.   whether the debtor will suffer irreparable harm if the settlement agreement is not filed under seal;

7.   whether the parties would be able to keep the terms of the settlement confidential in the absence of a bankruptcy filing;

8.   whose interests are being protected by allowing the filing of the settlement agreement under seal and whether there is any negative impact either on the estate or in the treatment of other interested parties in the case;

9.   what is the likelihood of other parties actually obtaining the details of the agreement if it is not filed under seal; and

10.  whether the document needs to be kept under seal permanently or some shorter time period could suffice.

*Id.*

The Movants insist that the BlackRock Defendants' "non-negotiable 'no seal, no deal' condition" is fundamental to this Court's analysis under the *Hemple* factors and is, on its own, "ample basis for granting" the requested relief.  Mot. Seal ¶¶ 32, 34.

The Movants' reliance on the *Hemple* factors is misplaced.  Despite providing a list of factors for courts to consider, the court in *Hemple* refused to seal the settlement at issue, due to the movant's failure to demonstrate that sealing the settlement agreement fell within the articulated exceptions to the general rule that all documents filed in a bankruptcy case are public records.  *See id.* at 202.  While it is unclear whether the *Hemple* factors are ever applicable given the plain meaning of § 107, it is clear that these factors should not be considered until after one of the exceptions to § 107 has been met.  *Id.* at 202 ("The starting point for this inquiry must be the general mandate of § 107 . . . ."); *see also In re FiberMark, Inc.*, 330 B.R. 480, 506 (Bankr. D. Vt. 2005) ("If the § 107(b) exceptions do not apply, the inquiry is complete and the Court's decision will favor public access.").

The Movants argument that the "no seal, no deal" condition is reason enough for sealing a document under § 107 is not only wrong under the law, it is also illogical.  If that were the standard for sealing, every settlement in a bankruptcy case would be sealed whenever a party insisted that a document be sealed.  Such a test would remove the need for analysis under § 107 and would directly conflict with the statute, the common law, and the legislative history of § 107.

As explained in *In re Oldco M Corp.*, 466 B.R. 234, 238 (Bankr. S.D.N.Y. 2012), "[s]ettlements are entitled to no greater protection than any other requests for relief from bankruptcy courts."  It has been said that "settlements of civil lawsuits are private arrangements between . . .  parties" and a court "plays no role whatever, standing 'indifferent' to the terms the parties have agreed to."  *Id.* (quotation omitted).  The Court is not persuaded that this statement

remains true where parties are seeking court approval of a settlement. *See McCaffrey v. Mortgage Sources, Corp.*, 2010 WL 4024065, at *1-*2 (D. Kan. 2010) (refusing to seal a settlement agreement between private litigants and stating that "the public's interest in understanding disputes that are presented to a public forum for resolution and knowing that the courts are fairly run and judges are honest, . . . outweighs any interest of the parties in keeping confidential the amount of settlement.") (quotation and citation omitted).

However, the notion that the court plays no role in settlements agreements is especially untrue when a trustee is seeking to settle a claim on behalf of the estate. *In re Oldco M Corp.*, 466 B.R. at 238. "[W]hen a trustee seeks to settle a claim on behalf of a bankruptcy estate, the public policy of open access to court records comes fully into play, and a searching judicial inquiry is required before approving the settlement." *Id.*

The presumption of open access, as codified in § 107(a), "is based on the need for federal courts . . . to have a measure of accountability and for the public to have confidence in the administration of justice . . . . [P]ublic monitoring is an essential feature of democratic control." *Geltzer v. Andersen Worldwide, S.C.*, 2007 WL 273526, at *2 (S.D.N.Y. 2007) (quoting *United States v. Amodeo*, 71 F.3d 1044, 1048 (2d. Cir. 1995)). As stated in *Anderson Worldwide*:

> Information most clearly due for disclosure includes any 'document which is presented to the court to invoke its powers.' … A stipulation of settlement in a matter in which the Court must approve the substance of the settlement is most certainly such a document. The press and public could hardly make an independent assessment of the facts underlying a judicial disposition, or assess judicial impartiality or bias, without knowing the essence of what the court has approved.

2007 WL 273526, at *2 (citations omitted). In *Andersen Worldwide*, the court rejected the trustee's request to seal a settlement amount and stated that

> the amount of the settlement is the critical factor in the Court's ability to assess whether the settlement should be approved. It therefore follows that it is also the

> critical factor in the ability of the public to monitor the appropriateness of the
> Court's decision. ... The sealing request here thus goes to the very core of the
> constitutionally-embedded presumption of openness in judicial proceedings.

*Id.* at *4 (internal quotation omitted); *see also Sept. 11 Litig. v. United Airlines, Inc.*, 723 F.

Supp. 2d 526, 532 (S.D.N.Y. 2010) ("Although the public has a strong interest in resolution

through settlement of complex and expensive cases . . . and the parties claim that the settlement

might not have occurred without a condition of confidentiality, the court must be skeptical of

such a claim, for 'if the case goes to trial, even more is likely to be disclosed.'") (internal

quotation omitted); *Bank of America Nat'l Trust and Sav. Ass'n v. Hotel Rittenhouse Assocs.*,

800 F.2d 339, 346 (3d Cir. 1986) ("Even if we were to assume that some settlements would not

be effectuated if their confidentiality was not assured, the generalized interest in encouraging

settlements does not rise to the level of interests that we have recognized may outweigh the

public's common law right of access.").

The "no seal, no deal" argument that is proffered by the Movants amounts to little more

than each side leveraging the threat of disclosure and the costs of trial over the other.  On the one

hand, the Trustee can hold publicity and trial costs over the heads of the Defendants to force a

settlement.  On the other hand, the Defendants can force the Trustee to seal the complaint by

holding over his head a lengthy and costly trial process.  In *Geltzer*, the court held that

preserving a position of leverage in negotiations with third party claimants did not justify sealing

court records.  *Geltzer v. Andersen Worldwide, S.C.*, 2007 WL 273526, at *4 (S.D.N.Y. Jan.30,

2007).  Likewise, providing third parties with a litigation advantage in outside actions does not

justify sealing a court document.  *In re Alterra Healthcare Corp.*, 353 B.R. 66, 76 (Bankr. D.

Del. 2006).  Leverage between opposing parties is an equally inappropriate justification for

sealing a complaint, under § 107.  Such leverage could be fabricated in almost every adversary

proceeding—which would render § 107's test meaningless.

It is clear that without meeting one of the explicit exceptions under § 107(b), the

existence of a settlement is not a proper reason to seal the documents.  Thus, the Court will

consider Movants request under § 107.

**Exceptions to the General Right to Access Court Documents under § 107(b)**

It should be noted that the Trustee originally asked for the complaints to be filed under

seal for the limited period of 45 days.  Joint Mot. ¶ 24, (No. 10-11319), ECF No. 74 (filed under

seal).  In his original request, the Trustee moved to seal the complaints based solely on the

concern that the documents contained confidential and commercial information, as well as

information covered by confidentiality orders that were signed in the main bankruptcy

proceeding.  *Id.* ¶ 21-22.  He asked that he be allowed to file the complaints under seal "*until* the

pending confidentiality issues have been resolved."  *Id.* ¶ 22 (emphasis added).   Additionally,

the Trustee argued that settlement negotiations were ongoing and that sealing was appropriate

where statutes of limitations deadlines were approaching.  *Id.* ¶ 23. The Trustee advised the court

in his motion that "filing the BlackRock and Bank Complaints under seal for a relatively brief

period of time: (i) [was] required by the Confidentiality Agreement and (ii) [was] necessary to

allow the Parties to engage in productive settlement discussions and [would] facilitate a good

faith effort to resolve this matter expeditiously."  *Id.* ¶ 9.

Similar arguments were made in the Trustee's motion seeking authorization for the

documents to remain under seal.  *See* Mot. Remain Under Seal (No. 12-01191), ECF No. 5; (No.

12-01192), ECF No. 5; (No. 12-01193), ECF No. 5; (No. 12-01204), ECF No. 5.  It was not until

after these motions were granted that the Court became aware of the Movants' intentions to keep

these complaints under seal for an extended period of time.  Movants' argument that the

complaints contain "scandalous" material was formally argued for the first time in this motion.

***Information contained in the documents is not "scandalous" or "defamatory"***

"Since the sealing of records runs contrary to the strong policy of public access, 'only

clear evidence of impropriety can overcome the presumption and justify protection under §

107(b)(2).'"  *Chase v. Chase (In re Chase)*, 2008 WL 2945997, at *6 (Bankr. S.D.N.Y. July 25,

2008) (quoting *In re Food Mgmt. Grp., LLC*, 359 B.R. 543, 556 (Bankr. S.D.N.Y. 2007).  It is

the movant's burden to demonstrate that grounds for an exception exist under § 107(b)(2).  *In re*

*Chase*, 2008 WL 2945997, at *6.  In order to meet this burden, the moving party must show

extraordinary circumstances and a compelling need for protection.  *Id.* (quoting *Video Software*

*Dealers Assoc. v. Orion Pictures Corp. (In re Orion Pictures Corp.)*, 21 F.3d 24, 27 (2d Cir.

1994)).  Only the most compelling reasons justify sealing court records.  *In re FiberMark, Inc.*,

330 B.R. 480 (Bankr. D. Vt. 2005).  As such, the Court must "carefully and skeptically review

sealing requests to insure that there really is an extraordinary circumstance or compelling need."

*Orion*, 21 F.3d at 27.  If the Court finds that one of the exceptions outlined in § 107 apply, it

must seal the documents.  *Id.* (sealing is mandatory where an exception applies and the request is

made by an interested party).

Parties seeking to have complaints redacted under § 107(b)(2) must establish that the

material contained in the Complaints is either: (i) "'scandalous' because it was grossly offensive,

irrelevant to the proceeding, and submitted for an improper use; or (ii) 'defamatory' because the

statements 'can be clearly shown to be untrue without the need for discovery or a mini-trial.'"

*Sec. Investor Protection Corp. v. Bernard L. Madoff Inv. Sec. LLC (In re Madoff)*, 2011 WL

1378602, at *3 (Bankr. S.D.N.Y. 2011) (quotation omitted).

What is considered "scandalous" is not defined by the Code.  Courts have taken various approaches to define this term.  Some courts looks to Black's Law Dictionary and define scandalous as a "matter that is both grossly disgraceful (or defamatory) and irrelevant to the action or defense."  *See In re Starbrite Props. Corp.*, 2012 Bankr. LEXIS 2599, at *19 (Bankr. E.D.N.Y. June 5, 2012) (citing cases); *But cf. Father M. v. Various Tort Claimants (In re Roman Catholic Archbishop of Portland in Oregon)*, 661 F.3d 417 (9th Cir. 2011) (defining "scandalous" as it is "commonly understood" and determining that allegations that a priest sexually abused children were "scandalous.").

Other courts have applied the interpretation of "scandalous" under Federal Rule of Civil Procedure 12(f).  Federal Rule of Civil Procedure 12(f) is applicable in bankruptcy adversary proceedings through Bankruptcy Rule 7012(b) and states that "[t]he court may strike from a pleading . . . any . . . scandalous matter."  Fed. R. Civ. P. 12(f); Fed. R. Bankr. P. 7012(b); *see also In re Starbrite Props. Corp.*, 2012 Bankr. LEXIS 2599, at *20; *In re Food Mgmt. Grp., LLC*, 359 B.R. 543, 558-59 (Bankr. S.D.N.Y. 2007) ("In interpreting § 107(b)(2) courts have considered Fed. R. Civ. P. 12(f) . . . ."); "Scandalous" under Federal Rule 12(f) is defined as "any allegation that *unnecessarily* reflects on the moral character of an individual or states anything in repulsive language that detracts from the dignity of the court."  *See In re Starbrite Props. Corp.*, 2012 Bankr. LEXIS 2599, at *20 (Bankr. E.D.N.Y. June 5, 2012) (emphasis added) (quoting *In re Food Mgmt. Grp.*, 359 B.R. at 558 n.16).

Here, the Movants argue that the complaints should remain under seal for a period of 30 years because the allegations contained within them are "scandalous."   The Movants argue that since the Defendants never filed an answer or had the opportunity to defend themselves, the complaints should be sealed.  They argue that the seal would protect the Defendants from

"negative publicity and reputational harm." Mot. Seal ¶ 48.  The individuals named  in the

complaint allegedly "hold prominent positions in industry and academia and enjoy positive

reputations in the business, education, charity, and government communities." *Id.*  The Movants

argue that the "allegations present a genuine risk of directly affecting those peoples' lives,

reputations and continued ability to make a living in their chosen professions." *Id.*

 The entirety of the Movants' argument for sealing the complaints pursuant to § 107(b)(2)

is based on the potential harm that could come to the reputations of the individual Defendants.

The Movants argue that the corporate defendant, BlackRock, must also be protected from

"reputational harm and unfair commercial injury resulting from the potentially scandalous nature

of the allegations." (emphasis added). Mot. Seal ¶ 51.  "[M]ere embarrassment or harm caused to

the party is insufficient to grant protection under § 107(b)(2)."  *In re Food Mgmt. Grp., LLC*, 359

B.R. 543, 561 (Bankr. S.D.N.Y. 2007) ("Simply showing that the information would harm the

company's reputation is not sufficient to overcome the strong common law presumption in favor

of public access to court proceedings and records.") (quotation omitted).  Courts have zealously

upheld the public's right to access and narrowly construed the exceptions.  *See Fibermark*, 330

B.R. at 506. "That information might 'conceivably' or 'possibly' fall within a protected category

is not sufficient to seal documents."  *Id.*

 Similarly, Movants' argument that Defendants have not had the chance to defend their

reputations is of no relevance.  These complaints have been filed for over a year, and the

Defendants were served with them on July 17, 2012.   Each defendant has been noticed of this

action and has had the opportunity to respond to these allegations as they see fit; each chose not

to exercise this option.  If the test for whether material were scandalous, and thus ripe for sealing,

were based upon whether a defendant answered a complaint, the defendant could merely decide

not to answer the complaint during settlement negotiations so as to achieve an automatic grounds

to seal the complaint and settlement.  That is not the test for whether a document should be

restricted from public viewing under § 107, and such a test would render meaningless the

presumption that documents filed in bankruptcy be open for inspection by the public.

Bankruptcy courts in this district have looked to the Second Circuit's strict interpretation

of the term "scandalous" under Federal Rule of Civil Procedure 12(f).  *In re Food Mgmt. Grp.,*

*LLC*, 359 B.R. 543, 558 (Bankr. S.D.N.Y. 2007); *Lipsky v. Commonwealth United Corp.*, 551

F.2d 887, 893 (2d Cir. 1976).  In applying Federal Rule 12(f), courts have been reluctant to deem

something as "scandalous" "unless it can be shown that no evidence in support of the allegation

would be admissible."  *In re Food Mgmt. Grp., LLC*, 359 B.R. at 558 (quotation omitted).

"[C]ourts will not strike scandalous statements that offend the sensibilities of the objecting party

if the challenged allegations describe acts or events *relevant* to the action."  *Id.* (emphasis

added).

In *In re Food Management*, Judge Glenn applied the same relevance standard that is used

in the context of 12(f) motions to his analysis under § 107 and, in so doing, determined that §

107 protection does not depend on the truthfulness of the alleged offensive statements.  *Id.* at 37.

Instead, relevance to the proceedings is the standard for determining whether or not something is

scandalous.  *Id.*

Having read an unredacted version of the complaints, the Court notes that they are full of

"editorial comments."  For example, the Trustee states that

> "Anthracite's story provides a window into the Wall Street greed that caused the
> real estate collapse of the last several years that took the economy with it.
> Seduced by perverse incentives that BlackRock itself put in place at Anthracite's
> inception -- which rewarded inflating volume and short term gains over prudent
> investing and risk management for long-term value -- BlackRock employees had
> Anthracite acquire more and more, riskier and riskier, below investment grade

tranches of commercial mortgage backed securities ("CMBS") and other securities."

BlackRock Compl. ¶ 5, (No. 12-01204), ECF No. 1.  He describes BlackRock as not wanting to "kill its cash cow."  *Id.* ¶ 2. He uses phrases to describe the acts of BlackRock and its employees in the following terms:  "lighting the fuse;" "as the explosion occurred;" "Anthracite's portfolio turned to rubble."  *Id.* at ¶ 7.  He alleges that "BlackRock ignored the troubles plaguing the industry and 'doubled down' – not with its own money, of course, but with that of Anthracite's investors . . . ."  *Id.* ¶ 11.

While this language may be flowery, the Trustee's allegations are not irrelevant to the causes of action he is bringing, the allegations are not grossly offensive, the complaints do not appear to have been submitted for an improper purpose, and the Movants have not argued otherwise.  Instead, the Movants argue that if unsealed, the reputations of the Defendants in this case could be tarnished.  An "unintended, potential secondary consequence of negative publicity does not warrant sealing[].  Nor is the fact that a filing is embarrassing to a party-in-interest a sufficient basis to justify sealing court records in the face of the express and important policy of public access to court records."  *In re Starbrite Props. Corp.*, 2012 Bankr. LEXIS 2599, at *22 (Bankr. E.D.N.Y. June 5, 2012).

By filing the complaints with the Court, the Trustee has certified that, to the best of his knowledge and after a reasonable inquiry, the information in the complaints "is not being presented for an improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation."  Fed. R. Bankr. P. 9011(b)(1).  He is subject to sanctions if he has violated this duty.  Fed. R. Bankr. P. 9011(c).

Although the argument has not been advanced by the parties, for something to be considered defamatory, it must be untrue.  *In re Food Mgmt. Grp., LLC*, 359 B.R. 543, 560

(Bankr. S.D.N.Y. 2007).  Potentially untrue statements are not defamatory.  *Id.*  It is the

Movants' burden to demonstrate that the allegations contained in the complaint are untrue.  *Id.*

 The documents in this case cannot be protected from public viewing under § 107(b)(2) as

nothing contained within them is "scandalous" or "defamatory."  The Movants have failed to

meet their burden under § 107(b)(2).

### Protection from identity theft or other unlawful injury under § 107(c)

 Although the Movants have not sought sealing under § 107(c), public disclosure of the

identifying information contained in these complaints does not present a risk of "unlawful

injury" to any of the individuals at issue.  *Sec. Investor Protection Corp. v. Bernard L. Madoff*

*Inv. Sec. LLC*, 2011 WL 1378602, at *3 (Bankr. S.D.N.Y. 2011).  Thus, Defendants cannot be

protected under this prong either.

### Confidential Commercial Information

 The Movants have also requested that the Court seal the documents in these Adversary

Proceedings under the theory that they contain confidential commercial information.  Section

107(b) provides that "[o]n request of a party in interest, the bankruptcy court shall, and on the

bankruptcy court's own motion, the bankruptcy court may . . . protect an entity with respect to a

trade secret or confidential research, development, or commercial information . . . ." 11 U.S.C. §

107(b)(1).

 The moving party bears the burden of demonstrating that the information it is seeking to

protect from public viewing is both commercial and confidential.  *In re Oldco M Corp.*, 466 B.R.

234, 237 (Bankr. S.D.N.Y. 2012); *In re Northwest Airlines Corp.*, 363 B.R. 704, 706 (Bankr.

S.D.N.Y. 2007).  "Good cause" is not a statutory requirement for granting the requested relief

under § 107(b). *Video Software Dealers Assoc. v. Orion Pictures Corp. (In re Orion Pictures*

*Corp.*), 21 F.3d 24, 28 (2d Cir. 1994); 11 U.S.C. § 107(b)(1).  Instead, the Code mandates that a

bankruptcy court grant the requested relief if the information is "confidential commercial

information."  11 U.S.C. § 107(b); *Orion Pictures Corp.*, 21 F.3d at 28.  Congress used the word

"or" to distinguish between trade secrets and commercial information in § 107; thus,

"[c]ommercial information need not rise to the level of a trade secret to qualify for protection

under section 107(b)."  *In re Borders Grp., Inc.*, 462 B.R. 42, 47 (Bankr. S.D.N.Y. 2011) (citing

*Orion Pictures, Corp.*, 21 F.3d at 28).

Information is not considered "commercial" merely because it relates to business affairs.

*In re Northwest Airlines Corp.*, 363 B.R. at 706 n.4.  Commercial information is "information

which would cause 'an unfair advantage to competitors by providing them information as to the

commercial operations of the debtor.'"  *Gowan v. Westford Asset Mgmt LLC (In re Dreier, LLP)*,

485 B.R. 821, 822-23 (Bankr. S.D.N.Y. 2013) (quotation omitted).  "The 'commercial

information' exception is not intended to offer a safe harbor for those who crave privacy or

secrecy for its own sake.  Instead, it protects parties from the release of information that could

cause them harm or give competitors an unfair advantage."  *Id.*

Where information "is so critical to the operations of the entity seeking the protective

order that its disclosure will unfairly benefit that entity's competitors[,]" that information should

be sealed under § 107(b).  *In re Barney's, Inc.*, 201 B.R. 703, 709 (Bankr. S.D.N.Y. 1996).  In *In

re Barney's*, the court provided examples of commercial information that should be sealed,

including pricing formulae, short and long term marketing strategies, and the terms of

agreements with suppliers.  *Id.* at 709.   The court in *Barney's* also determined that a proposed

investor's identity is not protected under § 107(b).  *Id.*  This is true even where the investor

threatens to withdraw if its identity is to be revealed.  *Id.*  The court stated that the potential

investor's "desire to avoid the professional embarrassment associated with the unsuccessful pursuit of a deal is no basis to grant this motion." *Id.*

Similarly, in *In re Frontier Group, LLC*, 256 B.R. 771, 774 (Bankr. E.D. Tenn. 2000), a physician list of a debtor-corporation that procured and assigned physicians to temporary positions in emergency rooms was considered confidential commercial information. And in *In re Nunn*, 49 B.R. 963, 965 (Bankr. E.D. Va. 1985), a customer list of a creditor was also considered confidential commercial information. Although these examples are specific to the facts of each case, they provide guidance for the types of information that can be protected from disclosure under § 107.

The Movants argue that they are seeking to protect information that "could be particularly harmful if disclosed without ever having been proven or even answered." Mot. Seal ¶ 42. According to them, allegations in the complaint "disclose proprietary BlackRock information … the disclosure of which may cause the BlackRock Defendants serious economic harm especially given the reputation-dependent nature of the businesses in which the BlackRock Defendants operate." *Id.*

The Movants argue that "[f]or example, the . . . [c]omplaints detail BlackRock's internal investment approval and allocation process, BlackRock's internal due diligence and underwriting procedures, and confidential information concerning investments made by *other* BlackRock managed funds." *Id.* ¶ 42 (emphasis in original) (internal quotation and citations omitted). Movants argue that such information may be used to "solicit clients" from the Defendants, "promote [the user's] own interest" at the Defendants' expense and "tarnish the . . . Defendants' professional reputations." *Id.* Additionally, the Movants argue that the individual Defendants' "careers will be jeopardized" if the Court does not grant the sealing motion. *Id.* ¶ 43.

As stated above, reputational harm and embarrassment do not justify the sealing of court

documents.  The 'commercial information' exception is not intended to offer a "safe harbor"

from such harm.  *In re Dreier LLP*, 485 B.R. at 822-23.  Rather, § 107(b)(1) is meant to prevent

business competitors from seeing confidential business-related information and using that

information to the detriment of the movant.  *Id.*  According to Movants, the protected

confidential information is "woven throughout" the complaints and court filings, but they have

failed to allege with specificity what information is jeopardized.

**Redaction of Confidential Commercial Information is Preferable to Sealing**

The Movants ask the Court to seal the entire litigation—including the allegations in the

complaint, the name of the Defendants, the firm representing the trustee, the firm representing

the Defendants, the settlement agreement and all other documents that have been filed in

connection with these Adversary Proceedings.

> The party seeking to seal any part of a judicial record bears the heavy burden of
> showing that "the material is the kind of information that courts will protect" and
> that disclosure will work a clearly defined and serious injury to the party seeking
> closure.  A party who seeks to seal an *entire* record faces an even heavier burden.

*Thompson v. Glenmede Trust Co.*, 1994 WL 689046, at *1 (E.D. Pa. 1994) (emphasis in original)

(citing and quoting *Miller v. Ind. Hosp.*, 16 F.3d 549, 551 (3d Cir.1994)).

The current motion does not contain direct references to the sections of the complaints

that Movants believe contain "confidential commercial information."  Instead, the Movants

argue that "[a]llegations in the Complaints 'disclose proprietary . . . information'" and then cite

to paragraph 13 of Exhibit D to this Motion.  Mot. Seal ¶ 42.  Exhibit D is a declaration of a

Managing Director of BlackRock, Inc.  Paragraph 13 of Exhibit D outlines three "example[s]" of

allegations that disclose commercial information, all of which are found in the Amended

Complaint, which has been filed under seal as an exhibit to a motion but has not yet been

approved for filing by the Court.  Mot. Seal, Ex. D ¶ 13.  The declaration does not address any of the documents that have been filed with the Court.

The Movants also cite a declaration of an attorney representing the BlackRock Defendants in this matter as additional support for sealing.  In his declaration, he argues that the Trustee's proposed amended complaint contains allegation from information that the BlackRock Defendants furnished during the Court ordered mediation process.  Mot. Seal, Ex. I ¶ 10-11.  The argument that the amended complaint contains commercial information is irrelevant to the current motion.  The Trustee has approval from this Court to file a motion to amend his complaint, which has not yet been filed with the Court.  Any argument as to the confidentiality of allegations contained in the amended complaint should be addressed in a separate opposition to that motion if and when it is filed.

Out of the 125 page complaint, which contains 412 paragraphs, and the numerous other documents that have been filed in this case, Movants have specifically identified thirteen paragraphs that they say contain confidential information—all of which are found in the yet to be approved amended complaint.

When protection is required under § 107, the Court has discretion in deciding *how* to protect commercial information as § 107 does not mandate sealing—only protection.  *In re Borders Group, Inc.*, 462 B.R. 42, 47 (Bankr. S.D.N.Y. 2011) (emphasis added); *see also* 11 U.S.C. § 107(b) ("[T]he bankruptcy court shall . . . *protect* a person with respect to confidential . . . commercial information . . . .)" (emphasis added).  "Redacting documents to remove only protectable information is preferable to wholesale sealing. The policy favoring public access supports making public as much information as possible while still preserving confidentiality of protectable information."  *Borders*, 462 B.R. at 47 (citing *Nixon v. Warner Commc'ns, Inc.*, 435

U.S. 589, 597-98 (1978)).  It is unclear why any offending information could not simply be

redacted.  *See In re Lomas Fin. Corp.*, 1991 WL 21231, at \*2, 1991 U.S. Dist. LEXIS 1589, at

\*5 (S.D.N.Y. Feb. 11, 1991) (bankruptcy court order sealing document is "overbroad" where

entire document was sealed though "[o]nly four sentences contain[ed] the offending material").

As such, the Adversary Proceedings cannot be sealed under § 107(b)(1).  The parties will have

an opportunity to argue for redaction of confidential commercial information at a subsequent

hearing.

**Confidentiality Agreement Does Not Change the Analysis under § 107(b)**

The Movants also argue that the confidential information is "expressly <u>protected</u> <u>from</u>

<u>disclosure</u> by orders of this Court and agreements among the parties" and its release would

violate the guarantees of protection provided to the BlackRock Defendants when they produced

the information.   Mot. Seal ¶ 44 (emphasis in original).  "Confidential documents exchanged in

the course of discovery, negotiation, and mediation need not be disclosed to the public." *World

Trade Center Prop.'s, LLC v. United Airlines, Inc.* (*In re September 11 Litig.*), 723 F.Supp.2d

526, 533 (S.D.N.Y. 2010).  Thus, to the extent that discovery documents have been filed and

Movants can prove that a document contains confidential commercial information, such

documents can be filed in a redacted format or under seal.  However, the fact that there is a

confidentiality order in place does not displace this Court's duty to scrutinize the request for a

seal order.  *See In re Hemple*, 295 B.R. 200, 201 (Bankr. D. Vt. 2003).

In *Hemple*, the Debtors and the Trustee agreed that the filing of the documents under seal

was warranted because the confidential agreement was a necessary precursor to the settlement,

no creditor would be prejudiced based upon the 100% dividend, and the settlement was in best

interest of estate.  *Id.* at 201.  Despite these facts, the court denied the request to file settlement

under seal for failure to meet the requirements of § 107(b).  *See also In re Lawlor*,  2003 WL

21288634, at *1 (Bankr. D. Vt. 2003) (denying request to seal despite settlement agreement

because parties did not prove significant harm sufficient to justify precluding public access and

did not prove that a less drastic remedy was unavailable).

　　Here, the confidentiality stipulation between the Trustee and BlackRock, Inc.

contemplates that the confidential documents would be used for the purpose of litigation and

adversary proceedings. *See* BlackRock Stip. ¶ 5, (No. 10-11319), ECF No. 68 ("Confidential

Information shall be used by the Parties only in connection with the Chapter 7 case, or any

litigation, mediation, dispute, contested matter or proceeding arising therein or related thereto,

and for no other purpose." ).  Moreover, any confidential information that is contained within the

complaints can be redacted.  In fact, the stipulations state that "Confidential Information shall not

be filed with the Court . . . unless the Party seeking to file the Confidential Information first

requests an order from the Court sealing all *portions of pleadings*, motions, or other papers . . . ."

*See id.* ¶ 11 (emphasis added).  As indicated by the language of the confidentiality agreements,

the parties contemplated that confidential information may be used in pleadings and other papers

and agreed that the proper remedy in such a situation would be redaction—not the sealing of the

entire document.

　　The stipulations also refer to confidential information, as defined by Bankruptcy Rule

9018.  *See id.* at 2 ("WHEREAS, the Parties have agreed that the Discovery Materials be subject

to this Stipulation to protect the confidentiality of any sensitive information pursuant to

Bankruptcy Rule 9018 of the Federal Rules of Bankruptcy Procedure . . . .)"; *see also id.* ¶ 2

("Designation of Discovery Materials as "CONFIDENTIAL" shall be based on a good faith

belief by the Producing Party that such materials contain (a) information that is confidential,

proprietary or otherwise not generally of the sort that is made available to the public, (b) a trade secret or other confidential research, development, or commercial information, or scandalous or defamatory matter protected by [Bankruptcy] Rule 9018 of the Bankruptcy Rules . . . ."); *see also id.* ¶ 12 ("[T]he burden shall be on the designating Party to justify the claim that the disputed material has been properly designated as confidential pursuant to Bankruptcy Rule 9018 and should remain under seal.").

Bankruptcy Rule 9018 implements § 107; it does not expand a bankruptcy court's ability to limit access to papers filed beyond § 107 nor does not provide a separate basis for relief.  *See* Fed. R. Bankr. P. 9018; *In re Borders Grp., Inc.*, 462 B.R. 42, 46 (Bankr. S.D.N.Y. 2011); *In re Gitto/Global Corp.*, 321 B.R. 367, 375 (Bankr. D. Mass. 2005).  Thus, even under the terms of their own agreement, the parties would be required to meet the requirements of § 107. See BlackRock Stip. ¶ 23 ("Nothing in this Stipulation shall relieve a Party of its obligations under the Bankruptcy Rules, the Federal Rules of Civil Procedure, any other applicable procedural rules, or under any future stipulations or orders, regarding the production of documents or the making of timely responses to discovery requests.").  As such, these confidentiality agreements do not support sealing and cannot be used to create an exception to § 107 where one does not exist.

**Equitable Concerns Do Not Justify Sealing**

The Movants argue that "equitable concerns" exist to warrant sealing.  Mot. Seal ¶ 52. According to the Movants, the confidential documents provided to the Trustee were provided in reliance on this Court's orders that confidentiality would be protected.  To unseal the documents at this time would be unfair, they allege, because the Defendants did not have the opportunity to make a motion or take any action to protect the privileges and confidential rights they asserted.

They simply "did exactly what the Court sought to encourage: engaged in settlement discussions which ultimately resolved all of these adversary proceedings." Mot. Seal ¶ 53. Denying the relief requested would be "unfair." *Id.*

The parties have also argued that it would be unfair to unseal the complaint and settlement since the Defendants have not filed a formal response to the complaint. It bears repeating that failure to file an answer or otherwise defend an action is not an enumerated exception to the public's right to access under § 107. The Settlement Agreements that the Court is asked to seal explicitly deny any liability of the Defendants. Mot. Seal, Ex B2 ¶ 3 ("This Settlement Agreement does not constitute, and shall not be construed as, an admission of liability by either Party."); Mot. Seal, Ex B3 ¶ 11 ("Nothing in this Settlement Agreement shall be construed as an admission of liability or fault by any party, which liability and fault are expressly denied)." If filed for public viewing, such language would demonstrate that the Defendants do not admit liability. Whether to defend or settle litigation, however, remains a decision for the parties involved and is not a relevant factor in deciding whether or not to protect a court document from public viewing.

"Parties have consensually agreed to a seal" and "unless otherwise ordered by the Court" are also not enumerated exceptions under § 107(b). Rather, the confidential information to be provided pursuant to the Confidentiality Agreement was to conform with Bankruptcy Rule 9018, which in turn, makes § 107 the applicable standard. Thus, there is nothing inherently "unfair" in allowing these allegations to be viewed by the public, as the standard for sealing and the standard for deeming something "confidential" under the Court's prior orders are one and the same.

That the parties now argue that they believed that the seal would be granted without meeting the standards of § 107 is astonishing. This Court repeatedly advised the parties that this

seal would be lifted and asked the parties to work out when and how that would be done. Prior

to the mediation, this Court advised the parties that the unsealing of these documents should be

included in the mediation process and settlement discussions. All orders that were previously

entered by the Court regarding the seal limited the seal to a specified and finite period. In no

way did this Court idle away in the parties' attempts to thwart the requirements of the

Bankruptcy Code. The parties' allegations are insulting.

**Generalized Public Policy Concerns Do Not Outweigh Congress' Mandate**

Movants argue that there is no overriding public policy that the Court need be concerned

with in this case. They argue that their situation is unlike *Nixon*, where the First Amendment and

separation of powers concerns were implicated in the sealing of the White House tapes, and *In re

Food Management*, where the court denied a request to seal an adversary complaint, which

named a law firm as a defendant. They argue that in *In re Food Management*, the allegations

related directly to the integrity and transparency of the bankruptcy court proceedings, and here

there are no such concerns. Rather, the seal is being sought in order to protect the interests of

non-debtor, third parties, who were sued by the Trustee. Additionally, Movants argue that the

main creditors in this case were informed of this motion and settlement through the Unsecured

Creditors Committee and Anthracite's investment activities did not affect the mortgage market as

Anthracite primarily acquired commercial mortgage loans and related securities. *See* Mot. Seal ¶

55-51.

While it may be true that the public policy concerns in *Nixon* and *Food Management* are

not implicated here, that does not change the outcome of this motion. Congress has articulated

and codified those public policies that it believes override the public's general right to access

court documents, namely confidential commercial information and scandalous material.

Congress has mandated through § 107(a) that any papers filed with this Court that do not fall within the stated exceptions of § 107(b) "are public records and open to examination …." 11 U.S.C. § 107(a). By enacting § 107, Congress has balanced the harms for the bankruptcy courts. Any other public policy concerns that may or may not arise in the context of a motion under § 107 has been determined by Congress to be less important than the public's right to access. *See* 11 U.S.C. § 107.

## Conclusion

For the foregoing reasons, the Joint Motion to seal is denied. The Court will hold an evidentiary hearing to consider which portions of the documents on file in the Adversary Proceedings should be redacted. The parties should be prepared to go over the documents line-by-line and provide evidence supporting why any redactions sought are consistent with this ruling. Prior to the hearing, the parties shall provide the Court with a copy of all requested redactions.

The Court will issue a separate order consistent with this decision.

Dated: Poughkeepsie, New York
      May 9, 2013       /s/ Cecelia G. Morris
                      CECELIA G. MORRIS
                      CHIEF UNITED STATES BANKRUPTCY JUDGE